# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANTHONY D. MULKEY,        :

     Plaintiff,           :

vs.                     :       CA 16-00077-C

NANCY A. BERRYHILL,      :
Acting Commissioner of Social Security,[1]:

     Defendant.        :


## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Anthony D. Mulkey brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security (the "Commissioner") denying his applications for child's insurance benefits ("CIB") and supplemental security income ("SSI") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 25 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 20-21), and the administrative record, (Doc. 19), (hereinafter cited as "(R. [page number(s) in

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), FED. R. CIV. P., Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

lower-right corner of transcript])"), it is determined that the Commissioner's decision is due to be **AFFIRMED**.

## I.     Background

Mulkey was born on December 30, 1993. (R. 15). The highest grade of school Mulkey attained was twelfth grade at Baker High School in Mobile, Alabama, and while there, he attended special education classes. (R. 191 [SSA Ex. 6E]). Mulkey's sole instance of employment, which occurred in the second quarter of 2012, was with Mother Mary's Family Restaurant. (R. 15).

Mulkey filed applications for CIB[2] and SSI[3] with the Social Security Administration (the "SSA"), on March 6, 2012, and January 14, 2013, respectively. (R. 13). In Mulkey's applications, he alleged disability beginning on February 1, 2001.[4] (R. 13). After Mulkey's claim was denied, he requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on April 23, 2014. (R. 13). On August 8, 2014, the ALJ issued an unfavorable decision on Mulkey's claims, finding him "not disabled" under sections 223(d) and 1614(a)(3)(A) of the Social Security Act. (R. 10-28).

Mulkey requested review of the ALJ's decision by the Appeals Council for

---

[2] "Congress amended the Social Security Act in 1939 to provide a monthly benefit for designated surviving family members of a deceased insured wage earner. 'Child's insurance benefits' are among the Act's family-protective measures. 53 Stat. 1364, as amended, 42 U.S.C. § 402(d)." *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 132 S. Ct. 2021, 2027, 182 L. Ed. 2d 887 (2012).

[3] "SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)." *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[4] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202-03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "An applicant qualifies for [CIB] if she meets the Act's definition of 'child,' is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death. [42 U.S.C.] § 402(d)(1)." *Astrue*, 132 S. Ct. at 2027 (footnote omitted).

the SSA's Office of Disability Adjudication and Review.  (R. 7-9).  The Appeals Council denied Mulkey's request for review on February 8, 2016, which made the ALJ's the final decision of the Commissioner.  (R. 1-6).  On February 24, 2016, Mulkey filed this action pursuant to § 405(g)[5] and § 1383(c)(3)[6] to review the final decision of the Commissioner.  (Doc. 1, ¶ 4).

## II.     Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Id.* (citations omitted).  "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'"  *Bloodsworth*, 703

---

[5] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow."  42 U.S.C. § 405(g).

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. 1383(c)(3).

F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the

claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

### III.    Claims on Judicial Review

1.    "The [ALJ] reversibly erred in failing to assign controlling weight to the opinion of the [Mulkey]'s treating physician, Edith McCreadie, M.D.[,] and instead adopted her own medical opinion.  The [ALJ] failed to show good cause in rejecting the Plaintiff's treating physician."  (Doc. 20, at 1-2).

2.    "The [ALJ] committed reversible error in violation of Social Security Regulations 20 C.F.R. § 416.945, 20 C.F.R. § 404.1545, and Social Security Ruling 96-8p in that the [ALJ]'s residual functional capacity [("RFC")] determination was not supported by substantial evidence."  (Doc. 20, at 2).

### IV.    Analysis

"At the first step, the ALJ must consider the claimant's current working situation.  If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'"  *Phillips*, 357 F.3d at 1237  (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b).  "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step."  *Phillips*, 357 F.3d at 1237.  At the first step, the ALJ determined that Mulkey had "not engaged in substantial gainful activity since February 1, 2001, the alleged onset date."  (R. 23).  The ALJ noted that Mulkey earned "$239.00 in income from Mother Mary's Family Restaurant in the second quarter of 2012," but "[t]his work activity did not rise to the level of substantial gainful activity."  (R. 15).

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the claimant's

medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined that Mulkey had the following severe impairments: "attention deficit disorder and borderline intellectual functioning." (R. 15).

At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Mulkey "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R. 17).

At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and

other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the fourth step, the ALJ assessed that Mulkey had the RFC:

[T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple tasks with only one- to two-step instructions; engage in occasional contact with the general public; and engage in occasional or casual contact with coworkers and supervisors, namely he is able to work in proximity to others but should not work in any position that requires teamwork.

(R. 18-19). The ALJ stated Mulkey had no past relevant work and, therefore, did not state whether Mulkey can return to his past relevant work. (R. 22).

At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.

There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the

national economy. The first is by applying the Medical Vocation Guidelines.

Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

*Phillips*, 357 F.3d at 1239-40 (footnotes omitted). At step five, the ALJ determined that, given Mulkey's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Mulkey] can perform" based on the testimony of the vocational expert, who opined that, based on Mulkey's limitations, he could perform the jobs of janitor cleaner, garment folder, and hand packers. (R. 22-23). Accordingly, the ALJ found that Mulkey "has not been under a disability, as defined in the Social Security Act, from February 1, 2001, through the date of [the ALJ's] decision." (R. 23).

### A. Claim 1

"'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments(s), including [the claimant's] symptoms,

diagnosis and prognosis, what [the claimant] can still do despite impairments(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178-79 (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted); *see also* 20 C.F.R. 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241. "Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the

ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179 (alterations in original).

Mulkey argues the ALJ reversibly erred in failing to assign controlling weight to the opinion of Mulkey's treating physician, Edith McCreadie, M.D, and instead, adopted her own medical opinion. Discharging the requirement that the ALJ "state with particularity the weight given to different medical opinions and the reasons therefore[,] *Winschel*, 631 F.3d at 1179, she assigned weight to the opinions of Dr. McCreadie, which were stated in a "Mental Residual Functional Capacity Questionnaire" ("MRFC Questionnaire"), (R. 278-79 [SSA Ex. 8F]), and the reasons therefor as follows:

The undersigned has accorded [Dr. McCreadie's] opinion little weight because it is not bolstered by the evidence. Her opinion appears to be based on subjective complaints. Her treatment notes from that date specify "form filled out only" and "no visit today just reviewed the form" with patient and mom. (Exhibit 9F). The severity of limitations she indicates is inconsistent both with the claimant's outpatient medication management as a referral to a mental health inpatient facility would be expected for a patient with marked limitations in all mental abilities and with his receipt of a high school diploma even if he took special education classes. Although she reported psychological evaluations had been obtained, she noted they [ ] occurred "At age 19-at Baye Pointe [sic] and also at Strickland;" however, the claimant's stay at Strickland occurred at the age of 17 which indicates both that Dr. McCreadie did not review these evaluations and that the source of her information was not wholly reliable. (Exhibits 8F and 10F). Last but not least, third party reports indicate the claimant's mother does not have a well-rounded view of her son's behavior. For example, on September 1, 2011, his mother reported he required instructions and directions for all activities. (Exhibit 4F). In

> contrast on June 18, 2012, it was noted that the responses from two
> of the claimant's teachers indicated his adaptive behavior fell in the
> higher borderline and intellectually deficient range of functioning.
> (Exhibit 2F).

(R. 21). Thus, the ALJ determined that Dr. McCreadie's opinions were not bolstered by the evidence and were inconsistent with the evidence of record. Mulkey argues the ALJ failed to show good cause for rejecting the opinions of Dr. McCreadie. (Doc. 20, at 2). The reasons stated by the ALJ for assigning little weight to Dr. McCreadie's opinions are "[Dr. McCreadie's] opinion appears to be based on subjective complaints," "[t]he severity of limitations [Dr. McCreadie] indicates is inconsistent both with [Mulkey's] outpatient medication management . . . and with his receipt of a high school diploma even if he took special education classes," "Dr. McCreadie did not review [Mulkey's psychological] evaluations and [ ] the source of her information was not wholly reliable," and "third party reports indicate [Mulkey's] mother does not have a well-rounded view of her son's behavior." (R. 21).

In the MRFC Questionnaire completed by Dr. McCreadie on April 2, 2014, she opined Mulkey had an extreme[7] impairment as to his activities of daily living; ability to understand, carry out, and remember instructions; ability to respond appropriately to customary work pressures; and ability to complete work related activities in a normal workday or workweek. (R. 278-79 [SSA Ex. 8F]). Dr. McCreadie opined Mulkey had a marked[8] impairment as to his estimated degree of difficulty in maintaining social functioning, ability to

---

[7] Defined in the MRFC Questionnaire as a "[s]evere impairment of ability to function independently, appropriately, effectively and on a sustained basis." (R. 278 [SSA Ex. 8F]).

[8] Defined in the MRFC Questionnaire as an "impairment which seriously affects ability to function independently, appropriately, effectively and on a sustained basis; 'marked' is more than 'moderate' but less than 'extreme.'" (R. 278 [SSA Ex. 8F]).

respond appropriately to supervision, ability to respond appropriately to co-workers, ability to perform simple tasks, and ability to perform repetitive tasks. (R. 278-79 [SSA Ex. 8F]). Additionally, Dr. McCreadie opined Mulkey had a constant deficiency of concentration, persistence, or pace resulting in failure to complete tasks in a timely and appropriate manner (commonly found in a work setting) and he would be expected to have four or more episodes of decompensation in work or work-like settings, which would cause him to withdraw from that situation or to experience exacerbation of signs and symptoms for a period lasting at least two weeks. (R. 278 [SSA Ex. 8F]). As to the side-effects of Mulkey's medications, Dr. McCreadie noted they caused "difficulty sleeping at night," and they "could make him drowsy." (R. 279 [SSA Ex. 8F]). Dr. McCreadie commented Mulkey "'sleeps all the time' and has difficulty staying on a regular schedule. He cannot stay on task no matter how simple or repetitive . . . even on his medication needs 24-hr supervision . . . cannot function independently." (R. 279 [SSA Ex. 8F]).

Dr. McCreadie noted on Mulkey's MRFC Questionnaire a psychological evaluation she obtained from BayPointe Hospital and Strickland Youth Center that was performed when Mulkey was 19-years-old. (R. 279 [SSA Ex. 8F]). However, Mulkey received a psychiatric evaluation at BayPointe Hospital, where he reported from Strickland Youth Center, when he was 17-years-old, (R. 297 [SSA Ex. 10F]). The ALJ concluded this "indicate[d] both that Dr. McCreadie did not review these evaluations and that the source of her information was not wholly reliable." (R. 21). Also, Dr. McCreadie's treatment notes from the date when she completed the MRFC Questionnaire state, during an appointment with Mulkey, "form filled out only" and "no visit today just reviewed the form [with

Mulkey and his mother]." (R. 280 [SSA Ex. 9F]). The ALJ concluded the MRFC Questionnaire was "based on subjective complaints" since Dr. McCreadie presumably completed the form with input from Mulkey and his mother. (R. 21).

Mulkey argues the opinion of Dr. McCreadie is supported by the medical evidence of record. (Doc. 20, at 4). The ALJ stated the "severity of limitations [Dr. McCreadie] indicates is inconsistent" with Mulkey's "outpatient medication management," and "his receipt of a high school diploma." (R. 21). Dr. McCreadie's treatment of Mulkey was limited to medication management. (R. 275-77 [SSA Ex. 7F]) & 280-81 [SSA Ex. 9F]). As the ALJ noted, Mulkey's "treatment records indicate his medication is relatively effective" and "[p]eriods of exacerbation have been linked to medication noncompliance." (R. 20). On March 28, 2011, Mulkey reported to BayPointe Hospital from Strickland Youth Center, at which time Shakeel Raza, M.D., performed a psychiatric evaluation of Mulkey. (R. 297-302 [SSA Ex. 10F]). Dr. Raza's diagnostic impression of Mulkey included mood disorder, attention deficit hyperactivity disorder, anxiety disorder, oppositional defiant disorder, parent/child relationship disorder, pervasive developmental disorder, borderline intellectual functioning, obesity, bullying at school, poor coping skills, and a Global Assessment of Functioning score of 40. (R. 301-02 [SSA Ex. 10F]). Dr. Raza recommended Mulkey be admitted under his care; receive a full range of services, including nursing care, daily meetings with the psychiatric team, and individual and group therapy; undergo a fire prevention program, anger management, and psychological testing including IQ testing and skill building. (R. 302 [SSA Ex. 10F]). In addition, Dr. Raza recommended school intervention, specifically in regard to

bullying at school and continuing to monitor Mulkey's symptoms and behavior. (R. 302 [SSA Ex. 10F]). At the time, Dr. Raza did not recommend medications for Mulkey. (R. 302 [SSA Ex. 10F]). On April 6, 2011, Mulkey was discharged from BayPointe Hospital, at which time a discharge summary was produced. (R. 292-95 [SSA Ex. 10F]). Mulkey's discharge diagnosis remained unchanged except his Global Assessment of Functioning score increased to 70. (*Compare* R. 292 [SSA Ex. 10F] *with* R. 301-02 [SSA Ex. 10F]). Upon discharge, Mulkey was prescribed Prozac, and Dr. Raza recommended Mulkey be released to Strickland Youth Center, continue taking Prozac, continue to participate in anger management counseling, have psychological testing including IQ testing, receive school intervention to reduce bullying, receive social skill building and fire prevention counseling, receive homebound counseling, and to contact emergency services or be transported to a hospital in the event of psychiatric emergencies. (R. 295 [SSA Ex. 10F]).

After Mulkey was discharged from BayPointe Hospital, he continued his care with AltaPointe Health Systems ("AltaPointe") until November 29, 2012. (*See* R. 282-92). On May 16, 2011, Mulkey was prescribed Prozac 10 mg, Concerta 36 mg, and Abilify 5 mg, (R. 290 [SSA Ex. 10F]); his prescriptions were adjusted on June 13, 2011, (R. 288 [SSA Ex. 10F]); adjusted, again, on September 1, 2011, to Prozac 20 mg, Concerta 36 mg twice daily, Ability 5 mg, and Wellbutrin 300 mg, (R. 286 [SSA Ex. 10F]), a regimen he was prescribed through November 29, 2012, (R. 284 & 282 [SSA Ex. 10F]). On November 29, 2012, Mulkey was noted to have a normal behavior; normal mood; appropriate to situation affect; unimpaired memory; logical, coherent, and within normal limits thoughts; unimpaired concentration; fair insight; fair judgment; and no anxiety. (R. 283 [SSA Ex. 10F]).

On February 13, 2013, Mulkey did not attend his appointment with AltaPointe. (R. 271 [SSA Ex. 5F]).

On March 25, 2013, Mulkey completed a mental examination with Lucile T. Williams, Psy. D., after he was referred by the Division of Disability Determination. (R. 272 [SSA Ex. 6F]). Dr. Williams noted that Mulkey did not take his medications prescribed by Dr. McCreadie "since December" because he was "kicked off of the Medicaid." (R. 272 [SSA Ex. 6F]). Mulkey, also, stated, "The medicine helps me to stay calm, pay attention, keep my anger in control." (R. 272 [SSA Ex. 6F]). Mulkey's prognosis was within six to twelve months, he would have a favorable response to treatment including psychotherapy. (R. 273 [SSA Ex. 6F]).

On October 17, 2013, Mulkey reported back to Dr. McCreadie, and from a follow-up visit on November 22, 2013, she noted his grandfather stated Mulkey's anger was controlled better since Mulkey resumed taking prescriptions. (R. 275 [SSA Ex. 7F]. As of November 22, 2013, Mulkey was prescribed Concerta 54 mg, Prozac 20 mg, Wellbutrin 150 mg twice daily, Depakote 250 mg twice daily, and Lopid 600 mg twice daily. (R. 276 [SSA Ex. 6F]). On January 20, 2014, at a visit with Dr. McCreadie, Mulkey's mother reported he was "jumping off" family members, but Depokate had a calming effect on him and his dosage was increased to 500 mg twice daily. (R. 281 [SSA Ex. 9F]).

In contrast to Dr. McCreadie's opinion that Mulkey would have extreme and marked restrictions in his ability to perform activities in a routine work setting and constant deficiencies of concentration, persistence, or pace, he testified he graduated from high school, (R. 34); he is able to read and write, (R. 34); he is able to add, subtract, multiply, and divide numbers (R. 34); he is able to

use a calculator, (R. 34); he is able to operate Facebook including activating and deactivating accounts, (R. 37); he participated in vocational training while in high school, (R. 34); he needs to be reminded to complete, but performs, household chores such as taking out the garbage and making his bed, (R.38); he is able to make himself a sandwich, (R. 38); and bathes himself and, sometimes, does so without being told, (R. 38). Further, in contrast to Dr. McCreadie's opinion that Mulkey would be expected to have four or more episodes of decompensation in work or work-like settings, Mulkey testified since he has taken his medications, his episodes of frustration and problems with concentration have reduced in frequency to "once in a blue moon." (R. 40).

Beverly Lowery, who taught Mulkey transition services, workforce essentials, and special driver education from 2011 to 2013, completed a "Teacher Questionnaire" about Mulkey. (R. 188-95 [SSA Ex. 6E]). The "Teacher Questionnaire" included sections that addressed topics such as acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself or herself, medical conditions and medications/health and physical well-being, and additional comments. (R. 188-95 [SSA Ex. 6E]). Ms. Lowery indicated Mulkey generally had serious to very serious problems in regard to indicia for acquiring and using information, (R. 189 [SSA Ex. 6E]); generally had obvious to very serious problems in regard to indicia for attending and completing tasks with weekly to daily frequency, (R. 190 [SSA Ex. 6E]); generally had a slight to very serious problem in regard to indicia for interacting and relating with others, (R. 191 [SSA Ex. 6E]); had very serious problems in regard to indicia for moving about and manipulating objects, (R. 192 [SSA Ex. 6E]); and generally had very

serious problems in regard to indicia for caring for himself with weekly to daily frequency, (R. 193 [SSA Ex. 6E]). However, Ms. Lowery noted Mulkey was "physically very lazy and slow," (R. 190 [SSA Ex. 6E]), "socially maladjusted," (R. 191 [SSA Ex. 6E]), and "should be independent but he chooses not to [be]," (R. 193 [SSA Ex. 6E]).

After reviewing all the relevant evidence in the record and listening to oral arguments, it is determined that good cause exists for the ALJ's decision to assign little weight to the opinion of Mulkey's treating physician, Dr. McCreadie, set forth in a "Mental Residual Functional Capacity Questionnaire," (R. 278-79 [SSA Ex. 8F]), and the ALJ's reasons for her decision are supported by substantial evidence.

### B.    Claim 2

In Claim 2, Mulkey argues the ALJ's RFC determination was not supported by substantial evidence, (Doc. 20, at 8), because the ALJ "rejected the opinion evidence and other medical evidence of record," when she found Mulkey was capable of performing work, (Doc. 20, at 11), and by doing so, "effectively practiced medicine," (Doc. 20, at 11). The Court construes these arguments to assert (1) the ALJ is required to adopt at least one medical opinion in formulating an RFC, and (2) the ALJ did not sufficiently show her work in formulating Mulkey's RFC.

The Court rejects both assertions. While the Social Security regulations require ALJs to consider all medical opinions in the record when making a disability determination, *see* 20 C.F.R. §§ 404.1527(b) & 416.927(b), "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make a disability determination

without any medical opinion in the record." *Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *11 (S.D. Ala. Apr. 24, 2015), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015); *see also Packer v. Astrue*, Civil Action No. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ is not precluded from making a proper RFC determination in the absence of an opinion from an acceptable medical source." (quotation omitted)), *aff'd*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013) (per curiam); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (quotation omitted)); 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)); 20 C.F.R. §§ 404.1546 & 416.946 ("If your case is at the [ALJ] hearing level . . . , the [ALJ] . . . is responsible for assessing your residual functional capacity."). The ALJ properly assigned little weight to Dr. McCreadie's opinion, *see supra*, and Mulkey has not asserted error as to the weight assigned to the state agency consultant's opinion.[9] Accordingly, the ALJ was not required to "fully reflect" either of those opinions in the RFC.

"A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) (per curiam). *See also Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. Mar. 23, 2007) (per curiam) ("The ALJ has a duty

---

[9] Moreover, the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *E.g.*, *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (per curiam).

to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981))). Nevertheless, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). In formulating the RFC at Step Four, the ALJ thoroughly discussed and weighed the evidence of record and drew conclusions from that evidence. Apart from the weight the ALJ assigned the two above-mentioned medical opinions, Mulkey points to no evidence the ALJ allegedly incorrectly or insufficiently assessed. Rather, she appears to assert only that the ALJ failed to adequately show her work in applying Social Security Ruling 96-8p. However, both this Circuit and others have repeatedly rejected similar contentions that an ALJ's failure to expressly show his or her work under SSR 96-8p is automatic grounds for reversal. *See Freeman*, 220 F. App'x at 959-60 ("Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis . . . . While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and

restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.' SSR 83–10."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. Nov. 30, 2009) ("Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded. The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ('DDS') reports in arriving at Castel's RFC. *See* SSR 96–8p . . . (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ ultimately decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work . . . . We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions.");

*Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities. While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand, the ALJ did limit Mr. Carson's exertional level of work to 'light work.' 'Light work' by definition limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day. *See* SSR 83–10, 1983 WL 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light work. Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed." (citing *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. Oct. 5, 2009) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (per curiam)); *Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. May 1, 2008) (per curiam) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function

assessment as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis. *See* [SSR] 96-8p, 1996 WL 374184, at *3."); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (rejecting claimant's contention that the ALJ's "RFC is not in the proper form" because the ALJ did not "separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull" (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . . [W]e cannot insist on technical perfection."))).

Accordingly, it is determined that the ALJ did not err in formulating the RFC at Step Four. She thoroughly discussed and weighed the evidence of record and drew conclusions from that evidence that were clearly articulated in her final decision.

## V.     Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued August 8, 2014, denying Mulkey's application for CIB and SSI is **AFFIRMED** under 42 U.S.C. § 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Rule 58, FED. R. CIV. P.

**DONE** and **ORDERED** this the 17th day of May 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**